

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| *ex rel.* **DON KENNARD, et. al,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:98-CV-266-TH** |
| | § | **JURY** |
| | § | |
| **COMSTOCK RESOURCES, INC., et. al.,** | § | |
| | § | |
| *Defendants.* | § | |

# MEMORANDUM OPINION & ORDER
# GRANTING DEFENDANTS' MOTION FOR
# SUMMARY JUDGMENT BASED ON RES JUDICATA

Before the Court is the *Defendants' Motion for Complete Summary Judgment on the Merits of Relators' Claims* [Clerk's Docket No. 73], filed October 3, 2008. Having considered the motion, the responsive submissions of the parties, the record, and the applicable law, the Court is of the opinion that the motion should be granted.

## I. INTRODUCTION

Relators Mary Jo Kennard, Bradley Sloan Wright and Elizabeth Ann Wright (collectively "Relators") bring this *qui tam* action on behalf of the United States against Comstock Resources,

Inc. ("Comstock") under the False Claims Act, 31 U.S.C. §§ 3729-3730 (the "FCA").[1] The FCA permits a private individual, called a "relator," to recover damages from any person who perpetrates a fraud on the United States Government. *United States ex rel. Fried v. W. Indep. Sch. Org.*, 527 F.3d 439, 441 (5th Cir. 1997) (full citation omitted). Comstock denies committing any such fraud, and in the instant motion moves for complete summary judgment on a variety of grounds.[2] One such ground is res judicata: Comstock argues that Relators' claims are precluded by the resolution of a related lawsuit in 2006. For the reasons that follow, the Court agrees that claim preclusion bars further prosecution of Relators' suit. Because the motion is decided on this basis, the Court does not reach the merits of Relators' claims.

## II. Factual & Procedural Background

The factual and procedural history of this case has been recounted in previous opinions of this and other courts.[3] Still, it is repeated here to illustrate the relation of this case to a similar lawsuit resolved in 2006–a relation that is at the heart of the decision rendered in this opinion.

---

[1] In an order dated February 20, 2009, the Court allowed Mary Jo Kennard, Bradley Sloan Wright and Elizabeth Ann Wright to be substituted for the original relators Don Kennard and Gene Wright. As discussed in that order, substitution was permitted because Alzheimer's disease has rendered Don Kennard mentally incompetent; and because Gene Wright died on August 15, 2008.

[2] Comstock previously launched a variety of jurisdictional challenges to Relators' suit: (1) its motion to dismiss for lack of original source status; (2) its opposition to substitution of the relators; and (3) its motion to dismiss for failure to join the Tribe. The Court considered each of these challenges and found them to be deficient. So, having satisfied itself of its jurisdiction to do so, the Court can now turn to the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998) (establishing that jurisdiction must be considered at the outset of a case).

[3] *United States ex. rel. Kennard v. Comstock*, No. 9:98-CV-266 (E.D. Tex. filed Feb. 20, 2008); *Kennard v. Comstock Res., Inc.*, 363 F.3d 1039 (10th Cir. 2004); *In re Natural Gas Royalties Qui Tam Litig.*, 2002 WL 32714554 (D. Wyo. Nov. 6, 2002).

Relators' claims in this case center on oil and gas leases between Comstock and the Alabama and Coushatta Indian Tribe (the "Tribe"), covering land within the Tribe's Reservation in Polk County, Texas (the "Indian Leases"). Comstock operated oil and gas wells on the Reservation in the early 1990s, according to the terms of the Indian Leases. The Indian Leases are subject to regulation by the Secretary of the Interior, who acts as a fiduciary for the Tribe. So, in accordance with Federal regulations, Comstock paid royalties owed to the Tribe to the Mineral Management Service (the "MMS"), an agency under the United States Department of the Interior.

The action begins in the late 1990s with relator Harrold E. "Gene" Wright ("Wright"). Wright owned a tract of land in East Texas near the Tribe's Reservation, and received royalty payments for gas wells on this property for more than twenty-five years. During that time, the operator on Wright's property sold its lease interests to Comstock. Wright's royalty payments then dropped dramatically. Based on this drop, and Wright's experience in the oil and gas industry, Wright speculated that Comstock was underpaying him and others in the area–including the Tribe.

Wright contacted relator Don Kennard ("Kennard") with this information. Kennard then researched public records at the Texas Railroad Commission and the Texas General Land Office and discovered that the Indian Leases might have expired. Based on this investigation and their personal knowledge, Relators concluded that Comstock was knowingly underpaying royalties to the Tribe.

Relators then shared this conclusion with their attorneys, and with the Tribe. After substantial consultation with these parties, Relators determined that Comstock had violated the

FCA by submitting fraudulently undervalued royalty payments to the MMS.

On October 26, 1998, the Tribe filed a *qui tam* suit against Comstock on this basis. Relators then filed this lawsuit the next day, alleging basically the same things contained in the Tribe's complaint. The specific claims contained in Relators' complaint fall into three categories: (1) claims that the Indian Leases expired by their own terms; (2) claims that Comstock underpaid royalties to the MMS, even if Indian Leases did not expire as alleged; and (3) claims that Comstock improperly drilled two wells (Well No. 6 and Well No. 7) on the Tribe's Reservation.

Shortly thereafter, the Tribe dropped their *qui tam* case and instead filed suit against Comstock in the tribal court of the Alabama and Coushatta Nation. There, the Tribe sought to have the Indian leases declared null and void because of deficiencies in execution, or because they had not been properly approved by the Secretary of the Interior.

In response to these developments, Comstock went on the offensive, filing a lawsuit of its own on February 9, 1999, in the United States District Court for the Eastern District of Texas, Lufkin Division (the "Declaratory Action"). This Declaratory Action was placed on the docket of the Honorable Paul Brown.[4] In the suit, Comstock sought declaratory judgment *inter alia*: (1) that the Indian Leases were valid and in full effect; and (2) that Comstock had performed all of its obligations under the Indian Leases, including payment of all royalties. The Tribe and the Department of the Interior were named as defendants in the Declaratory Action.

---

[4] The Declaratory Action was originally assigned case number 9:99-CV-31 in the Lufkin Division. On December 28, 1999, Judge Brown transferred the case to the Sherman Division, where it was given case number 4:99-CV-312. The Declaratory Action produced two published opinions: *Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Tex.*, 78 F. Supp. 2d 589 (E.D. Tex. 1999); and *Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Tex.*, 261 F.3d 567 (5th Cir. 2001).

And, the Department of the Interior was represented in the suit by the United States Department of Justice.

In short, the Declaratory Action and this FCA action are two sides of the same coin. Where Relators in this case claim that the Indian Leases expired and royalties were underpaid, Comstock claimed in the Declaratory Action that the leases were valid and royalties fully paid.

For a brief period of time, both the Declaratory Action and Relators' FCA suit were before Judge Brown. However, in 2001 the FCA case was transferred by the Judicial Panel on Multidistrict Litigation to the District of Wyoming where it proceeded before the Honorable William F. Downes. In the meantime, the Declaratory Action moved along in Texas.

Then, after several years of litigation—and a trip to the Fifth Circuit Court of Appeals—the parties to the Declaratory Action formally resolved their dispute by executing a "Compromise and Settlement Agreement" on January 4, 2006. Specifically, Comstock, the Tribe and the United States (by and through the Secretary of the Interior) entered into this settlement agreement. The parties explicitly stipulated that each of the Indian Leases "is, and always has been, valid and in full force and effect, and binding upon the Tribe." (Def.s' Mot. for Complete Summ. J. on the Merits, Ex. N at 4). The Department of the Interior agreed to dismiss all prior demands for royalty payments made to Comstock. *Id.* And, the Tribe released Comstock from any and all claims "arising out of or relating to the Leases or the Wells, or the royalty proceeds attributable to the Leases" including claims that could have been asserted in the Declaratory Action. *Id.* at 13.

The parties to the Declaratory Action then filed a "Joint Stipulation of Dismissal With

Prejudice" on January 23, 2006, relating their settlement to Judge Brown. *Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Tex.*, No. 4:99-CV-312 (E.D. Tex. filed Jan. 23, 2006). In this filing, the parties stipulated to the dismissal (with prejudice) "of all claims and causes of action that have been asserted or that could have been asserted in [the Declaratory Action]," in accordance with Rule 41(a)(1)(ii) of the FEDERAL RULES OF CIVIL PROCEDURE. *Id.* Judge Brown reviewed the stipulation of dismissal and entered a "Final Order of Dismissal With Prejudice." *Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Tex.*, No. 4:99-CV-312 (E.D. Tex. filed Jan. 25, 2006).

Now, three years later, Comstock argues that this resolution of the Declaratory Action has a preclusive effect on Relators' claims in this FCA suit.

This Court is faced with claims that are unquestionably related to those litigated in the Declaratory Action. Relators' claims here concern the validity of the same Indian Leases, and allegations of the same royalty underpayments that were the subject of the Declaratory Action. Relators do not dispute these facts. However, they dispute that these facts preclude any of their claims. Relators assert that resolution of Declaratory Action did not produce the conditions necessary for claim preclusion. Relators' chief argument is that applying *res judicata* to bar their claims would deny them due process, since they were not a party to the Declaratory Action.

The Court discusses these arguments below, but first considers the legal principles that must guide the analysis.

# III. APPLICABLE LAW

A. The FCA

The FCA prohibits the submission of false or fraudulent claims to the Federal Government. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 224 (1st Cir. 2004). It was enacted in 1863 with the primary goal of "stopping the massive frauds perpetrated by large [defense] contractors [against the Union Army] during the Civil War." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 781, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000). FCA violators are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that [violator]." 31 U.S.C. § 3729(a).

The FCA's "*qui tam*" provisions permit a private individual (a relator) to sue on behalf of the Government to recover damages from any person who "knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7); *United States ex rel. Doe v. Dow*, 343 F.3d 325, 329 (5th Cir. 2003). A relator's *qui tam* complaint is filed under seal and served on the Government with "a written disclosure of substantially all material evidence and information" in the relator's possession. 31 U.S.C. § 3730(b)(2). The Government may then intervene and take over the lawsuit, or decline to intervene, "in which case the person bringing the action shall have the right to conduct the action." 31 U.S.C. § 3730(b)(2), (4).

"The relator receives a share of any proceeds from the action–generally ranging from 15 to 25 percent if the Government intervenes (depending upon the relator's contribution to the

prosecution), and from 25 to 30 percent if it does not (depending upon the court's assessment of what is reasonable)–plus attorney's fees and costs." *Stevens*, 529 U.S. at 773-74.

## B.  Summary Judgment

Summary judgment is proper when, after viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(C).  If the moving party establishes the absence of any genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Conclusory allegations, unsubstantiated assertions, and mere scintillas of evidence do not satisfy this burden. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is proper where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof.  A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Rule 56(c) of the FEDERAL RULES OF CIVIL PROCEDURE requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  But the court is not obligated to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996).  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,

89 L. Ed. 2d 538 (1986). However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468-69, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992).

## C. Res Judicata

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, —U.S.—, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008).

Under Federal common law, "[t]he rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educ. Servs. Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2002)). This memorandum opinion is concerned only with claim preclusion.

The doctrine of claim preclusion provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct LLC v. Dyson Inc.*, —F.3d—, 2009 U.S. App. LEXIS 4803, at *4, 2009 WL 428451, at *2 (5th Cir. Feb. 23, 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)); *Test Masters*, 428 F.3d at 571; *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-313 (5th Cir. 2004); *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). Its purpose is to insure the finality of judgments, thereby conserving judicial resources and protecting litigants from multiple lawsuits. *Oreck*, 2009 U.S. App. LEXIS 4803, at *4 (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994); *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94-95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S. Ct. 117, 54 L. Ed.

2d 93 (1977) (discussing the multiple policies served by res judicata).

Four elements are necessary for a claim to be barred by res judicata: (1) the parties in the two actions must be identical or in privity; (2) the judgment in the prior action must be rendered by a court of competent jurisdiction; (3) the prior action must be concluded by a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. *Test Masters*, 428 F.3d at 571 (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)); *Southmark,* 163 F.3d at 934; *Shanbaum*, 10 F.3d at 310.

With these standards in mind, the Court now turns to the parties' contentions regarding the preclusive effect of the Declaratory Action.

## IV. GROUNDS FOR CLAIM PRECLUSION

The Court must consider whether the United States' stipulated dismissal with prejudice in the Declaratory Action precludes Relators' claims in this FCA suit.[5] The United States Government, through the Department of the Interior, was a party to the Declaratory Action and the dismissal.[6] Relators were not. However, as discussed below, the Court finds that the

---

[5]At the outset, the Court notes that the fact that this FCA suit was filed before the Declaratory Action is of no significance. "It is the first final judgment rendered in one of the courts which becomes conclusive in the other as res judicata," irrespective of which action was first brought. *Chi., Rock Island & Pac. Ry. Co. v. Schendel*, 270 U.S. 611, 616-17, 46 S. Ct. 420, 70 L. Ed. 757 (1926); *P&G v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004); *Hogue v. Royse City*, 939 F.2d 1249, 1255 (5th Cir. 1991) ("[A] later-filed claim can be preclusive of an earlier-filed claim.").

[6]The actions of the Department of the Interior have a binding effect on the Department of Justice, and other officers and agencies of the United States Government in this case. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402-03 (1940) ("there is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the

elements required for claim preclusion do exist. Further, the Court finds that applying claim preclusion to Relators does not violate due process.

## A. Element 1: Identity of Parties

The identity requirement of claim preclusion is concerned with *who* may be bound by a prior judgment. In short, it provides that the parties to prior and subsequent actions must be identical or in privity to be subject to preclusion. *Test Masters*, 428 F.3d at 571. The Fifth Circuit considers this determination to be a question of law. *Southwest*, 546 F.2d at 95 (the identity of parties "represents a legal conclusion rather than a judgmental process").

### (1) Strict Identity

The United States and Relators are not identical parties. Both the Fifth Circuit and (recently) this Court have recognized that the Government and a relator are not in direct identity. *United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279, 294 (5th Cir. 1999), *cert. denied*, 530 U.S. 1202, 120 S. Ct. 2194, 147 L. Ed. 2d 231 (2000); *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 815 (E.D. Tex. 2008). But, strict identity of parties is not necessary to satisfy the identity element of claim preclusion. *Russell v. SunAmerica Sec. Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). As stated above, claim preclusion may also be applied to a nonparty who is considered to be in privity with a party to the prior suit. *Test Masters,* 428 F.3d at 571; *Southwest*, 546 F.2d at 94-95.

---

government."); *Extevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1995) ("[T]he government, its officers, and its agencies are regarded as being in privity for [res judicata] purposes."). Accordingly, the Court generally refers to the United States as the "Government" in this opinion without distinction.

For the reasons that follow, the Court finds that the relationship between Relators and the Government is sufficiently close to conclude that they are in privity; and that the identity element is satisfied.

## (2) Privity; Exceptions to the Rule Against Nonparty Preclusion

The Federal common law of preclusion is subject to due process limitations. *Taylor*, 128 S. Ct. at 2171 (citing *Richards v. Jefferson County*, 517 U.S. 793, 797, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996)). And, due process generally prevents the application of claim preclusion to a person who was not a party to an earlier suit. *Id.; Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990) (stating that the due process guarantees of the Fifth and Fourteenth Amendments require this prohibition). Accordingly, the general rule is that "one is not bound by a judgment *in personam* in litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor*, 128 S.Ct. at 2171. (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940)); *Meza*, 908 F.2d at 1266 ("It is a fundamental principle of American jurisprudence that a person cannot be bound by a judgment in litigation to which he was not a party.") (citing *Martin v. Wilks*, 490 U.S. 755, 109 S. Ct. 2180, 2184, 104 L. Ed. 2d 835 (1989).

However, Federal courts have held that judgments can bind nonparties under certain circumstances. *Taylor*, 128 S.Ct. at 2171-73; *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170 (5th Cir. 1992) (citing *Meza*, 908 F.2d at 1266).

At common law, the preclusive effect of a judgment extended to nonparties "in privity" with parties to the suit. *Meza*, 908 F.2d at 1266. And, the concept of privity has continually

been recognized by the Fifth Circuit Court of Appeals as a basis for extending res judicata to a nonparty. *Test Masters,* 428 F.3d at 571; *Meza,* 908 F.2d at 1266; *Southwest*, 546 F.2d at 94-95. According to Fifth Circuit case law, "parties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell v. SunAmerica*, 962 F.2d at 1174. But, "when the relationship between the party and nonparty becomes too attenuated" the due process clause prevents preclusion. *Southwest*, 546 F.2d at 95 (citing *Hansberry*, 311 U.S. 32). This is all well and good. But, in practice, the concept of privity is fairly amorphous.

Privity is "a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Southwest*, 546 F.2d at 95 (citation omitted). In other words, privity is "merely another way of saying that there is sufficient identity between parties" for res judicata to apply. *Meza*, 908 F.2d at 1266. It is a label that expresses the determination that preclusion is justified. 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4449, 351 n.33 (2d ed. 2002). "Privity is not a requirement [the court] can satisfy through inquiry; rather the existence of "privity" is the inquiry satisfied." *Russell v. SunAmerica*, 962 F.2d at 1174. Given these circular pronouncements, it is understandable that privity has been called an "elusive and manipulable concept." *Meza*, 908 F.2d at 1266. The United States Supreme Court has even described it as being "conclusory and analytically unsound," *Montana v. United States*, 440 U.S. 147, 154 n.5, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

The Supreme Court's uneasiness with "privity" was also apparent its recent opinion in *Taylor v. Sturgell*, —U.S.—, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). In *Taylor* the Court considered the permissible reach of nonparty preclusion, but avoided use of the term "privity" altogether–"to avoid confusion." *Id.* at 2172 n.8. The Court pointed out the multiple meanings

of the term; first stating that in the res judicata context, "privity" sometimes refers to the "substantive legal relationships justifying preclusion," *Id.* (citing *Richards*, 517 U.S. at 798), then noting that privity "has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Id.* (citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4449, 351-353 (2d ed. 2002).

While the *Taylor* Court did not apply a "privity" label to the discussion, it did recognize six discrete exceptions to the general rule against nonparty preclusion. *Taylor*, 128 S. Ct. at 2172-2173. First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." *Id.* (quoting the Restatement (Second) of Judgments § 40, p 390 (1980)). Second, "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Id.* (quoting D. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 77-78 (2001)). Third, "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who [wa]s a party to the suit." *Id.* (quoting *Richards*, 517 U.S. at 798) (internal quotation marks omitted). "Fourth, a nonparty is bound by a judgment if she assume[d] control over the litigation in which that judgment was rendered." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 154, 99 S. Ct. 970, 59 L. Ed. 2d 210) (internal quotation marks omitted). "Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Id.* In other words, a nonparty is precluded from bringing suit "as the designated representative of a person who was a party to the prior adjudication." *Id.* (citing *Chi., Rock Island & Pac. Ry. Co. v. Schendel*, 270 U.S. 611, 620, 623, 46 S. Ct. 420, 70 L. Ed. 757 (1926)). And sixth, in certain circumstances a special statutory scheme (like bankruptcy and probate proceedings) may

"expressly foreclos[e] successive litigation by nonlitigants...if the scheme is otherwise consistent with due process." *Id.* (quoting *Martin v. Wilks*, 490 U.S. at 762).

As stated above, the *Taylor* Court intentionally avoided using the term "privity" in the opinion. *Taylor*, 128 S. Ct. at 2172 n.8. But, by delineating exceptions to the rule against nonparty preclusion, it unquestionably set forth six relationships that are sufficiently close to justify such preclusion. *Id.* at 2172-73. In other words, *Taylor* recognized six relationships that justify a finding of privity. *See id.; United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (stating that the fourth *Taylor* exception was a reference to "a relationship justifying a finding of privity"); *Pelt v. Utah*, 539 F.3d 1271, 1281-82, 1284 (10th Cir. 2008) (stating that in *Taylor* the Supreme Court defined discrete categories of exception to be used in deciding whether a relationship between a party and a nonparty is close enough to trigger nonparty preclusion); *Yankton Sioux Tribe v. United States Dep't of Health and Human Servs.*, 533 F.3d 634, 640 (8th Cir. 2008) (applying the third Taylor exception to determine whether there was privity between parties); *see also Meza*, 908 F.2d at 1266 (listing three categories of "privity" that are identical to three of the *Taylor* exceptions; specifically, exceptions two, three and four).[7]

To summarize the foregoing principles: the general rule is that a person cannot be bound by a judgment in litigation to which he was not a party. *Taylor*, 128 S.Ct. at 2171; *Hansberry*, 311

---

[7]In a recent unpublished opinion, the Fifth Circuit recognized that *Taylor* had "articulated six exceptions to the identical party rule." *Cuauhtli v. Chase Home Finance, LLC*, Slip Copy, 2009 WL 188072, at *1, 2009 U.S. App. LEXIS 1581, at *2-3 (5th Cir. Jan. 27, 2009). The Court's discussion of identity suggests that the *Taylor* exceptions should be used to analyze this element of claim preclusion; and the imprecise label of "privity" should be discarded. But, it has not formally taken this position. Nevertheless, whether the identity element is analyzed in terms of the *Taylor* exceptions or in terms of "privity," the underlying consideration is the same: there must be a sufficiently close relationship between a party and a nonparty to merit the application of nonparty preclusion.

U.S. at 40; *Meza*, 908 F.2d at 1266.  However, there are six recognized exceptions to this rule. *Taylor*, 128 S. Ct. at 2172-73; *Meza*, 908 F.2d at 1266.[8]  These exceptions represent examples of relationships between a party and a nonparty that are sufficiently related to justify preclusion of the nonparty.  *Taylor*, 128 S. Ct. 2172-73.  If any one of the exceptions applies to Relators in this case, due process is not offended, and the identity element necessary for preclusion is satisfied. *Id.; see United States v. Bhatia*, 545 F.3d at 759; *Pelt*, 539 F.3d at 1281-82, 1284; *Yankton Sioux Tribe*, 533 F.3d at 640; *Cuauhtli v. Chase Home Fin., LLC*, Slip Copy, 2009 WL 188072, at *1, 2009 U.S. App. LEXIS 1581, at *2-3 (5th Cir. Jan. 27, 2009).

(3)  <u>The Relationship Between Relators and the Government is Close Enough to Trigger Nonparty Preclusion</u>

The Court finds two bases for concluding that sufficient identity exists between the Government and Relators to merit preclusion.  The first basis is their substantive legal relationship as assignor and assignee.  The second is the Relator's role in this suit as a representative of the governement.

(a) <u>The Second *Taylor* Exception: A Substantive Legal Relationship</u>

The *Taylor* exception most apparently applicable to Relators is the second: the existence of a "substantive legal relationship" between Relators and the Government.  *Taylor*, 128 S. Ct. at 2172.  *Taylor* specifically set forth examples of "[q]ualifying relationships," including "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."

---

[8]While the Supreme Court recognized six categories of exception in *Taylor*, it also explained that the list of six was not meant to "establish a definite taxonomy."  *Id.*, 128 S. Ct. at 2172.

*Id.* (citing 2 Restatement(Second) of Judgments §§ 43-44, 52, 55 (1980). And, it is well-established that under the FCA the Government makes a partial assignment of its damages claim to the relator. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 73-74, 120 S. Ct. 1858, 146 L. Ed. 2d 836(2000). It is this partial assignment that gives the relator an interest in the case–and standing to bring a *qui tam* suit in the first place. *Id.* The partial assignment is effective no later than the time when the relator brings the FCA action. *See United States ex rel. Laird v. Lockheed Martin Eng'g & Sci Serv.*, 336 F.3d 346, 358 (5th Cir. 2003).

However, Relators argue that because the assignment in this case predates the filing of Declaratory Action, due process prevents them from being bound by the Government's settlement of the Declaratory Action. In other words, Relators argue that once the Government assigns its interest to Relators, it can no longer give that interest away. For support, Relators look to *Postal Telegraph Cable Company v. Newport*, 247 U.S. 464, 38 S. Ct. 566, 62 L. Ed. 1215 (1918), in which the Supreme Court discussed a grantor's inability to transfer better right or title than he himself has. *Id.* at 475-76. Specifically, Relators cite the Court's statement that "nothing which the grantor can do or suffer after he has parted with the title can affect rights previously vested in the grantee, for there is no longer privity between them." *Id.*

*Postal Telegraph*, however, is distinguishable from the circumstances of this case in several respects. First, it involved a conveyance of property–not an assignment of a damage claim. *Postal Telegraph*, 247 U.S. 464. But, more importantly, the preceding property owner in *Postal Telegraph* conveyed "all its rights and interests" in the property to the succeeding owner. *Id.*, 247 U.S. at 475-76. Here–as in all FCA cases–the Government made only a *partial* assignment of its damage claim. And, under the FCA, "the government retains the unilateral power to dismiss an action 'notwithstanding the objections of the [relator].'" *Riley v. St. Luke's Episcopal Hosp.*, 252

F.3d 749, 754 (5th Cir. 2001) (citing *Searcy v. Philips Elec. N. Am. Corp.*, 117 F.3d 154, 159 (5th Cir. 1997) (citing 31 U.S.C. § 3730(c)(2)(A))). As such, it is clear that the Government can still give away a relators' interest after making the partial assignment.

Additionally, Federal courts have consistently recognized that the Government may be bound by res judicata because of the actions of a relator. *United States ex rel. Mergent v. Flaherty*, 540 F.3d 89, 993-94 (2d Cir. 2008); *United States ex rel. Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007); *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 455 (5th Cir. 2005) (citing *Riley*, 252 F.3d at 757-58); *Searcy v. Philips Elec. N. Am. Corp.*, 117 F.3d 154, 157-58 (5th Cir. 1997); *In re Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997); *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D. D.C. 2003); *United States ex rel. Schwartz v. TRW Inc.*, 118 F. Supp. 2d 991, 996 (C.D. Cal. 2000). And, it appears that courts have reached this conclusion, at least in part, based on the assignor-assignee relationship between the Government and the relator. *See e.g., Mergent*, 540 F.3d at 993-94; *Stoner*, 502 F.3d at 1126. If this relationship provides a basis for concluding that the Government may be bound by a relator's actions, it follows that the relationship is sufficiently close for the Government's actions to likewise bind the relator. *See Schendel*, 270 U.S. at 618 ("If in legal contemplation there is identity of parties" when two suits are brought in one order, "there must be like identity" when the order is reversed).

For these reasons, the Court finds that the substantive legal relationship between the Government and Relators as assignor and assignee is sufficiently close to justify preclusion of Relators' claims.

(b) <u>The Fifth *Taylor* Exception: Agency</u>

Additionally, and in the alternative, the Court finds that the fifth *Taylor* exception is applicable to Relators because they are acting on behalf of the Government. The fifth *Taylor* exception provides that preclusion applies to a nonparty who "brings suit as an agent for a party who is bound by a judgment." *Taylor*, 128 S. Ct. at 2173.

It is undisputed that the United States is bound by the judgment entered in the Declaratory Action. And now, Relators are bringing suit as an agent for the United States. The plain language of the FCA provides that a relator brings the suit for himself "and for the United States Government...in the name of the United States Government." 31 U.S.C. § 3730(b)(1); *see Stevens*, 529 U.S. at 773-74 (discussing the agency relationship between the relator and the Government as a basis for the relator's standing). Even the phrase *"qui tam"* evidences the agency relationship. It is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which translates to "who pursues this action on our Lord the King's behalf as well as his own." *Rockwell Int'l Corp. v. United States ex rel. Stone*, 549 U.S. 457, 127 S. Ct. 1397, 1403 n.2, 167 L. Ed. 2d 190 (2007)). So, an agency relationship clearly exists. Still, the analysis cannot end here.

In *Taylor*, the Supreme Court advised courts to "be cautious about finding preclusion on [the basis of this fifth category of exceptions]." *Taylor*, 128 S. Ct. at 2179. The Court suggested that the fifth category should be analyzed with a "control test" for agency. The Court stated that "preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication." *Id.* (citing 1 Restatement (Second) of Agency § 14, 60 (1957); *Montana v. United States*, 440 U.S. 147, 99 S. Ct. 970, 59 L. Ed. 2d 210

(1979)).  Accordingly, this Court must now consider the degree of control maintained by the Government in the instant suit.

The Government has not intervened in this FCA case.  However, the Fifth Circuit has stated that the Government still maintains a "continuum of control" over a relator, regardless of the decision on intervention.  *Riley v. St. Luke's Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (citing *United States ex rel Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 289-90 (5th Cir. 1999).  "[E]ven in cases where the Government does not intervene, there are a number of control mechanisms present in the qui tam provisions of the FCA so that the [Government] nonetheless retains a significant amount of control over the litigation." *Riley*, 252 F.3d at 753.

For example, even if the Government initially elects to let the relator conduct the action, the court may nevertheless permit the Government to intervene at a later date upon a showing of good cause.  *Foulds*, 171 F.3d at 283 n.5 (citing 31 U.S.C. § 3730(c)(D)(3).  And, when such late intervention occurs, the Government has "a similar degree of control over the litigation as if it had intervened at the start." *United States ex rel. Kelly v. Boeing Company,* 9 F.3d 743, 752 (9th Cir. 1993) (citing *Morrison v. Olson*, 487 U.S. 654, 682, 108 S. Ct. 2597, 101 L. Ed. 2d 569 (1988)).

Without intervening, the Government may "request that it be served with copies of pleadings and be sent deposition transcripts…[and it] may pursue alternative remedies, such as administrative proceedings." *Riley*, 252 F.3d at 754 (citing *Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 307 (5th Cir. 1999)).  "Additionally, in the area of discovery, if the government shows that discovery initiated by a qui tam plaintiff 'would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay the discovery for sixty days or more," whether or not the government intervenes. *Id.*

(citing 31 U.S.C. § 3130(c)(4)).

With regard to resolving the suit, the Government may settle a case over a relator's objections if the relator receives notice and hearing of the settlement. *Riley*, 252 F.3d at 754 (citing 31 U.S.C. § 3130(c)(2)(B)). The Government has a similar right to block a settlement. *Searcy*, 117 F.3d at 157-158. In fact, it has "an absolute veto power" over settlements, even if it has not intervened.[9] *Id.* at 158. Finally, despite the government's non-intervention, it still receives "the larger share of any recovery, amounting to up to 70% of the proceeds of a lawsuit." *Id.* (citing *Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d at 307).

In summary, the foregoing mechanisms in the qui tam framework "enable the government to retain a tremendous amount of control over a qui tam suit even when it chooses not to intervene." *United States ex rel. Laird v. Lockheed Martin Eng'g and Science Servs.*, 336 F.3d 346, 357-58 (5th Cir. 2003).

Accordingly, the Court finds that Relators' conduct of this suit is subject to the control of the Government to such a degree that the representative relationship between Relators and the United States justifies preclusion.

(4)  Conclusion as to Identity Element

For the foregoing reasons, individually and collectively, the Court finds that the

_____

[9] The undersigned still feels the sting of the Government's veto power, having been summarily reversed by the Fifth Circuit in *Searcy v. Philips Electronics North America Corporation*, 117 F.3d 154 (5th Cir. 1997), after granting the voluntary dismissal of an FCA suit over the Government's objection.

relationship between Relators and the Government is sufficiently close to trigger res judicata. As such, the identity element of claim preclusion is satisfied.

## B.  Element 2:  Judgment by a Court of Competent Jurisdiction

The second element necessary for claim preclusion is that the judgment in the prior action was rendered by a court of competent jurisdiction.  *Test Masters Educ. Servs. Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)); *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999); *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994).  Judgment in the Declaratory Action was rendered by the United States District Court for the Eastern District of Texas ("Judge Brown's Court").  And, in *Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Texas*, 261 F.3d 567 (5th Cir. 2001), the Fifth Circuit held that Judge Brown's court was one of competent jurisdiction.  *Id.* at 572-75.

Still, Relators argue that only *this* Court has jurisdiction to rule on their claims.  This argument misses the point.  The second element of claim preclusion simply requires that Judge Brown's Court had jurisdiction to determine the claims that were before it in the Declaratory Action.  As Relators concede, it unquestionably did.  (Relators' Resp. at 29); *see Comstock Oil*, 261 F.3d at 572-73.

Accordingly, the second element necessary for claim preclusion exists.

## C.  Element 3:  Final Judgment on the Merits

The third element of claim preclusion requires "a final judgment on the merits" in the prior adjudication. *Oreck Direct LLC v. Dyson Inc.*, —F.3d—, 2009 U.S. App. LEXIS 4803, at *4, 2009 WL 428451 (5th Cir. Feb. 23, 2009). Relators rightly do not dispute this element.

As stated above, the parties to the Declaratory Action filed a "Joint Stipulation of Dismissal With Prejudice" on January 23, 2006, pursuant to Rule 41(a)(1)(ii) of the FEDERAL RULES OF CIVIL PROCEDURE, in which they stipulated to the dismissal (with prejudice) "of all claims and causes of action that have been asserted or that could have been asserted in [the Declaratory Action]." Judge Brown reviewed the stipulation of dismissal and entered a "Final Order of Dismissal With Prejudice," on January 25, 2006.

"It is clear that a stipulation of dismissal with prejudice...normally constitutes a final judgment on the merits." *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 501 (5th Cir. 1994) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 538-39 (5th Cir. 1978); *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992) (stating that the Fifth Circuit "has long recognized that a consent judgment is a judgment on the merits, and is normally given the finality accorded under the rules of claim preclusion") (citing *Kaspar*, 575 F.2d at 538-39); *see Oreck*, 2009 U.S. App. LEXIS 2009, at *5.

Therefore, the third preclusion requirement is satisfied.

D. Element 4: Identity of Claims

The fourth element of claim preclusion concerns the identity of claims. To satisfy this element, the claims or causes of action in the prior and subsequent actions must be the same.

*Test Masters*, 428 F.3d at 571. The Fifth Circuit applies the "transactional test" of the Restatement (Second) of Judgments § 24 to determine whether there is identity between claims. *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007); *Test Masters,* 428 F.3d at 571; *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004); *Southmark ,* 163 F.3d at 934; *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 171 (5th Cir. 1992). The transactional test focuses the inquiry on whether the two cases are based on "the same nucleus of operative facts." *Davenport*, 484 F.3d at 326. If two cases are based on the same nucleus of operative facts, a judgment in the prior case has a preclusive effect that "extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original action] arose.'" *Id.* (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).

Relators' claims here concern the validity of the same Indian Leases on the Alabama and Coushatta Reservation. They also involve allegations of the same royalty underpayments that were the subject of the Declaratory Action. The facts giving rise to Relators' claims in this case are identical to those giving rise to the claims in the Declaratory Action. These facts include the same parties, the same oil and gas leases and the same allegations of wrongdoing over the same time period. There are no distinctions to be made between the factual scenario in this and the Declaratory action. Plainly, the two cases are based on the same nucleus of operative facts.

Furthermore, it makes no difference that the causes of action in the Declaratory Action sounded in contract, while the cause of action here arises out of the FCA. "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *Id.* (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994).

Therefore, the Court finds that this suit and the Declaratory action involve the same claims or cause of action. The fourth (and final) element of claim preclusion is satisfied.


E. Conclusion: The Conditions for Claim Preclusion Exist


In summary, the Court finds: (1) that Relators are in privity with the Government; (2) that the judgment in the Declaratory Action was rendered by a court of competent jurisdiction; (3) that the Declaratory Action was concluded with a final judgment on the merits; and (4) that the claims involved in this case and those in the Declaratory Action are the same. All of the elements necessary for claim preclusion being present, the Court concludes that Relators are bound by the 2006 judgment in the Declaratory Action.


**V. SCOPE OF PRECLUSION**


Having determined that the Declaratory Action has a preclusive effect on this case, the Court must still determine the scope of that effect. As previously stated, the doctrine of claim preclusion provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct LLC v. Dyson Inc.*, —F.3d—, 2009 U.S. App. LEXIS 4803, at *4, 2009 WL 428451 (5th Cir. Feb. 23, 2009); *Test Masters*, 428 F.3d at 571; *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-313 (5th Cir. 2004); *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). As such, the Court must determine whether all matters at issue in this case were or could have been raised in the Declaratory Action.


Here, Relators' complaint makes allegations that fall into three categories: (1) claims that

the Indian Leases expired by their own terms; (2) claims that Comstock underpaid royalties to the MMS, even if Indian Leases did not expire as alleged; and (3) claims that Comstock improperly drilled two wells (Well No. 6 and Well No. 7) on the Tribe's Reservation Tract 1. The issues of lease expiration and royalty underpayment were explicitly raised in the Declaratory Action. The improper drilling claims were not. The question, then, is whether the claims regarding improper drilling of Well No. 6 and 7 could have been raised in the Declaratory Action. The answer is affirmative.

The claims regarding Well No. 6 and 7 were so connected in time and in subject matter with the claims in the Declaratory Action, that they could (and probably should) have been brought in the Declaratory action. *See Davis*, 383 F.3d at 314. Accordingly, those improper drilling claims are precluded as well.

## VI. Conclusion & Order

After more than a decade of litigation this case has run into a brick wall. There is no way over, around or through it: claim preclusion bars further prosecution of the suit. Relators' claims must be dismissed.

**IT IS THEREFORE ORDERED** that the *Defendants' Motion for Complete Summary Judgment on the Merits of Relators' Claims* [Clerk's Docket No. 73] is in all things **GRANTED**.

**IT IS FURTHER ORDER** that all pending motions in this civil action are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Relators' claims are hereby **DISMISSED WITH PREJUDICE**.  A final judgment on these claims will be entered separately in accordance with Fed. R. Civ. P. 58.

**IT IS FURTHER ORDERED** that the clerk is **DIRECTED** to close this file.

**SO ORDERED.**

**SIGNED** this the 23 day of **March, 2009.**

Thad Heartfield
United States District Judge